**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHARON L. MULLINS,** : | |
| **DAVID KRAMER, and** | |
| **WILLIAM HESS,** : | **CIVIL ACTION NO. 3:01-0234** |
| Plaintiffs : | **(CAPUTO, J.)** |
| v. | **(MANNION, M.J.)** |
| : | |
| **RAYMOND A. SMITH,** | |
| : | |
| Defendant | |
| : | |

## REPORT AND RECOMMENDATION

### I.    Procedural History

On February 6, 2001, the plaintiffs filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging violations of their First Amendment Rights by the defendant, a township supervisor. (Doc. No. 1). An amended complaint was filed on March 7, 2001. (Doc. No. 6). This was followed by a motion to dismiss filed by the defendant on March 23, 2001. (Doc. No. 7). The plaintiffs filed a brief in opposition to the motion to dismiss on April 18, 2001. (Doc. No. 10). And the defendant filed a reply memorandum on May 8, 2001. (Doc. No. 13).

Following discussions with counsel, multiple motions and briefs related to discovery, subpoenas, protective orders, motions to quash, and motions to compel, the court held settlement conferences in an effort to determine if there was a possible amicable resolution to the matter. Once it is determined

that the matter could not be settled, the court lifted a stay of discovery which had been entered to allow the parties a cooling-off period before meeting for the settlement conference.

Following the unsuccessful attempts to resolve this matter, the court then reached the above-mentioned, and then pending, motions to dismiss. In a report and recommendation dated March 11, 2002 (Doc. No. 35), the undersigned recommended that the matter be dismissed, *inter alia*, because the court lacked jurisdiction to entertain a § 1983 matter as the plaintiffs had failed to establish that the defendant's action were taken under color of state law.

Following objections filed by plaintiffs, the district court entered a memorandum and order on May 2, 2002 (Doc. No. 39) rejecting the report and recommendation.

Following additional motions, briefs, discovery disputes and extensions of time to complete discovery, defendant filed the instant motion for summary judgment on July 31, 2003.  (Doc. No. 56).  He also filed his brief in support and exhibits that same day. (Doc. Nos. 57 & 58).   On August 22, 2003, plaintiffs filed their brief in opposition and statement of material facts. (Doc. Nos. 63 & 64).   The matter is now ripe for disposition.

II   **Factual Background**

Butler Township is a political subdivision which exists under the laws

of the Commonwealth of Pennsylvania.  At the time in question, it was governed by a three member board of supervisors who are elected to serve overlapping six year terms.    (Doc. No. 6).   In November 1999, the defendant, Raymond A. Smith, was elected to serve a six year term.  He began that term in January of 2000 and the expiration of that term would be January 2006. (Doc. No. 6, ¶ 17).  It appeared that at some point during this litigation, the defendant served as the vice-chairman of the Township Board of Supervisors.[1]

The essence of this alleged civil rights violation relates to the activities that occurred at the November 15, 2000 Board of Supervisors' meeting in which the salient words uttered by Smith were "I'm getting my permit.  You'll have it and you'll be satisfied.  And don't single me out or everybody will be sued."  (Doc. No. 57, p. 2; Doc. No. 64, p.11).  Additionally, on November 20, 2000 Smith filed a state court defamation action against the three named plaintiffs. (Doc. No. 58, Exh. L).   It is alleged that these two actions, the alleged threat and the lawsuit, "chilled" the plaintiffs' constitutional rights to

---

[1] It is noted that in many of their submissions, the plaintiffs refer to the defendant as having "presided over" the Township meetings. However, a review of the record indicates that Smith had been acting as the vice-chairman of the Board. There is no indication that he personally was the presiding officer or chairman of the Board.  To the extent that the three member Board may all have "presided over" the meeting, it does not appear anywhere that Mr. Smith had any authority higher or different than the other members of the Board.

free speech.

## III.  Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  Id.  The moving party can

discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence or make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

**IV    Argument**

The courts have recognized that in order to present a civil rights cause of action under 42 U.S.C. § 1983 two (2) elements must be proven. First, the conduct complained of must have been committed by a person acting under color of state law. Second, the conduct must have deprived the plaintiff of rights, privileges and immunities secured by the constitutional

laws of the United States.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 923 (1982); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).  In fact the 1983 statute itself reads:

> Every person who, under color of any statute, ordinance, regulation, custom or usage . . . subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to that third party injured.

42 U.S.C. § 1983 (2000).

In its May 3, 2002 memorandum rejecting the report and recommendation, the district court specifically found that defendant's alleged conduct at the November 15, 2000 public hearing had been under color of state law.  In so finding, the district court stated:

> When considering Defendant's alleged conduct at the public meeting, I find that the Defendant was acting under color of state law. Defendant presided over the public meeting, which was part of his official duties. . . The fact that in this case, Defendant threatened to sue Plaintiffs if they continued speaking does not remove the action from the context of acting under color of state law. In presiding over the meeting, Defendant was acting under color of state law. Moreover, unlike *Gritchen*[2], official activity is at issue in this case. (Emphasis in original). . . Defendant's interaction with Plaintiffs is tied to his execution of official duties in overseeing the Butler Township public meeting.

(Doc. No. 39, pp. 8-9).

The first element is satisfied to the extent that the district court has already found "that the defendant was acting under color of state law." Id.

---

[2]Gritchen v. Collier, 254 F. 3d 807 (9th Cir. 2001).

6

No facts or circumstances have changed with respect to this statement or the context in which it was made since the time the motion to dismiss was filed. While it is true that a motion to dismiss is reviewed based upon a different standard than a motion for summary judgment, there has been no change in salient facts concerning the context, timing or location of that statement. As such, the district court's previous decision on that issue is dispositive.

Similarly, the filing of the defamation action has also been determined by the district court as an action "under color of state law." In its May 3, 2002 Opinion rejecting the report and recommendation, the court stated that reliance

> ". . .on the Ninth Circuit's recent opinion in Gritchen[3], concluded that Defendant was not acting under color of state law when he filed the defamation action (Doc. No. 35 at pp. 8-9), I find that the Magistrate Judge improperly relied upon Gritchen. In Gritchen, the defendant was a police officer who threatened to file a slander and defamation suit against the plaintiff for filing a complaint with the police department alleging that the defendant was discourteous and argumentative while issuing a traffic ticket and that his breath smelled of alcohol. (Gritchen, 254 F.3d at 809). While acknowledging Gritchen's potential applicability in a factual scenario where Defendant, a Township Supervisor, had only filed a defamation action, the Magistrate Judge failed to properly consider Defendant's additional conduct at the November 15, 2000, public meeting, which distinguishes the present case from Gritchen.

(Doc. No. 39, p. 7).

---

[3] Id.

7

As such, if defendant disagreed with the district court's ruling on the issue of whether his activities were "under color of state law", he should have requested reconsideration, reargument or interlocutory appeal. But for purposes of this case, that issue has been decided by the district court and, as noted above, there has been no additional facts or circumstances which justify the undersigned in revisiting that issue in this report and recommendation.

This leaves the defendant's argument that "plaintiffs were not deprived of their right of free speech by the threat of, or filing of, a defamation action." (Doc. No. 57, p. 18). In this regard, the court agrees. In order to show a deprivation of the First Amendment, the plaintiffs must show that their "speech was in fact chilled or intimidated" by the activities of the defendant. Sullivan v. Carrick, 888 F.2d 1, 4 (1st Cir. 1989). The mere allegations that they have been chilled or intimidated is insufficient. Sullivan, Id. citing Gordon v. Warren Consolidated Board of Education, 706 F.2d 778, 780 (6th Cir. 1983); accord Laird v. Tatum, 408 U.S. 1, 13 (1972). The Sullivan court went on to state that:

> "Arguably, there was a potential chilling of Sullivan's willingness to testify. . . There are no specifics offered to support such a conclusion; there is no evidence in the record to indicate any such chilling; and the inference that Sullivan would have us draw - that the June 10 letter, in and of itself, somehow had the potential to chill his freedom of speech - is, on this record too implausible to be accorded weight. Where a chilling affect is speculative, indirect or too remote, finding an abridgement of the First Amendment rights is unfounded." (Citing United States v.

Harriss, 347 U.S. 612 (1954)). (Id. at 4).

That court went on to note that "The facts indicate that Sullivan was anything but intimidated. As shown by the December, 1985 filing of the present action, (the defendants' activities) never intimidated Sullivan. Furthermore, Sullivan moved to dismiss (the) complaint . . . again showing that he obviously was not intimidated. Sullivan's rights remain unviolated." Id. at 4.

The same can be said for plaintiffs in this action. Not only has the defendant's activities failed to chill or intimidate their constitutional right to speech, but it seemingly has empowered their public allegations and criticism of the defendant. In the deposition of William Hess taken on October 29, 2001, approximately one year after the alleged chilling incidents of November 15 & 20, 2000, Mr. Hess supplied the following answers:

> Q. From the time you returned to Florida in or around May 2001 until now, when you have gone to these public meetings, you told me you went back and have been going to the meetings, have you spoken your mind?
>
> A. I would have to say yes.
>
> Q. Have you said what you thought had to be said?
>
> A. Yes, I would say whatever I have to say, I had the right to get up and say, yeah.
>
> Q. Have you stopped going to meetings, or have you decided not to go to a particular meeting as a result of the lawsuit Mr. Smith brought against you?
>
> A. I don't think that I owe him that much. Why should he

>   deprive me of my right to attend meetings? That's my privilege as a citizen of Butler Township.

(Doc. No. 58, Exh. G, pp. 217-218).

Similarly, when asked about the conduct of co-plaintiffs, Mrs. Mullins and Mr. Kramer, Mr. Hess answered:

>   Q. Since the state court lawsuit brought by Mr. Smith against Ms. Mullins and Mr. Kramer, have they stopped going to meetings to the best of your knowledge?
>
>   A. No, I don't think they have.

Similarly, when the plaintiff David Kramer was deposed on April 4, 2003, the following questions and answers occurred:

>   Q. At the Board of Supervisors meeting, did Raymond Smith deny you the right to speak at any time?
>
>   A. Could you restate that.
>
>   Q. At the Board of Supervisors' meeting, did Raymond Smith deny you the right to speak at any time?
>
>   A. To actually say, Mr. Kramer, you are not allowed to speak anymore? No. Through his actions, his intimidation actions, his cursing, it certainly would infringe upon the rights of people wanting to voice their opinions.
>
>   Q. Did you finish?
>
>   A. Yes, sir.
>
>   Q. I am asking, not other people, but yourself. Alright?
>
>   A. Oh.

Q. Now, you have already told me that he did not directly refuse to allow you to speak, correct?

A. Correct.

Q. Again, we're still focusing on the November 15, 2000 meeting until I tell you otherwise. Okay?

A. Alright.

Q. You have already told me that, even after he made the comment about him, getting my permit and I'll sue anybody. . . don't single me out or everybody will be sued. . . that after he made that comment, you continued to speak and voice your opinion, correct, You've told me that?

A. Yes.

Q. So by his words and by his cursing, you continued to voice your views and opinions at that November 15, 2000 meeting, did you not, despite what Mr. Smith said?

A. With a degree a caution, I'd say.

Q. But you still did?

A. Yes.

The third defendant, Mrs. Mullins also was deposed in this case. However, none of the parties have submitted a copy of her deposition as an exhibit.[4] In reviewing the Statement of Material Facts submitted by the plaintiff in opposition to the defendant's motion for summary judgment, they have included excerpts, which presumably favor their side, from Mrs. Mullins'

---

[4] The defendant listed her deposition as Exhibit J to Doc. No. 58, however, that transcript was not attached to the court's copy.

11

deposition. Contrary to the plaintiffs' argument that Statement of Material Fact No. 59 (Doc. No. 63) displays Mrs. Mullins' intimidation and/or that her First Amendment rights being chilled by the activities of Smith, the deposition transcript are inconclusive at best. For example, during Mrs. Mullins' deposition, she was <u>unable</u> to recall the specifics of the meeting that occurred on November 15, 2000, a meeting which forms the meat of her case. (Doc. No. 63, pp. 15-19). More specifically when asked whether the defendant had denied her the right to speak at the November 15, 2000, Mrs. Mullins replied:

> A. At some time it was, I am not sure it was at the November 15th meeting, but at some time it was.
>
> Q. Are you telling me that at a Board of Supervisor's meeting it was, but you are not sure that it was at the November 15th meeting, or are you telling me at some point in your life? I didn't understand your answer.
>
> A. I am not sure what was stated at that November 15th meeting in regard to that statement.
>
> Q. What were you referring to when you told me that at some point that Mr. Smith denied you the right to speak, can you tell me please?
>
> A. Well, if you speak at a township meeting, then you are sued after that, why, you're kind of speechless.
>
> Q. Is that what you
>
> A. And still speechless.
>
> Q. I didn't mean to interrupt you. Are you finished?
>
> A. I'm still speechless. Finished.

> Q. Is that what you meant when you answered my question before when I asked you what you were referring to as to whether Raymond Smith ever denied you the right to speak?
>
> A. Yes.

(Id. at pp. 15-16).

Additionally, according to the plaintiffs' statement of material facts, it appears that Ms. Mullins. . .is unable to identify the time or activity that has chilled her First Amendment rights.

> Q. Did you have a specific recollection that the way in which Mr. Smith answered any question you had on November 15th prevented you from expressing your opinion? Do you remember that?
>
> A. Again, without viewing the videotape of the November 15th meeting, I cannot answer exactly what has happened at that meeting.
>
> Q. Nor do you have any memory of him answering your questions in any way that prevented you from expressing your opinions or anything at that meeting; isn't that right?
>
> A. No, I'm sure it was that meeting where he answered, his statement of, I should mind my own business and not mingle in his.
>
> Q. And it was that statement combined with him filing a lawsuit that did what?
>
> A. Stopped me from speaking.

later on,

> Q. In this press release at the third paragraph, it says "But make no mistake about it, Kramer, Mullins and Hess will not be intimidated or silenced by any of Smith's bullying tactics." Let me just stop

>   there for a moment.  Is that true and correct.
>
> A.   That's correct.

(Id. at pp. 18-19).

This continued ambiguity between allegations of being silenced and statements concerning their refusal to be silenced or intimidated are throughout the depositions.

Despite these allegations of their speech being chilled, it appears that after the November 15, 2000 meeting, and indeed after the November 20, 2000 filing of the state court defamation action, the plaintiffs were undeterred in their criticisms and outspoken activities with respect to the defendant.  For example, in addition to the above-mentioned press release, on February 7, 2001, the Pottsville News Item contained an article concerning the plaintiffs' filing of this Federal Civil Rights suit against the defendant.  According to the article,

> "As we stated before, because Supervisor Smith initiated a lawsuit designed to deprive us of out right to fully participate in Butler Township meetings, we will do everything possible and utilize every legal option available to us, to protect our constitutional rights and demonstrate the futility of Mr. Smith's attempt to intimidate us.  We will not stop until not only our rights, but all citizens of Butler Township are completely and without a doubt vindicated", says Mullins, Kramer and Hess in a joint release issued Tuesday.  (Quotation marks from original article).

(Doc. No. 29, Exh. H).

14

In addition, shortly after the plaintiff withdrew his state court defamation action against the defendants on September 17, 2001. (Doc. No. 22, Exhs. D, E and F), the plaintiffs filed a malicious prosecution suit in the Court of Common Pleas of Schuylkill County under Docket No. S-2159-01. They have now filed two lawsuits against the defendant as a result of his allegedly chilling activities.  Additionally, the above-mentioned references indicate plaintiffs' continued practice of attending and speaking at Township meetings, at least through the time of their depositions. They have participated in press releases criticizing the defendant's activities and claiming publically that they are not, have not and will not be intimidated or silenced.  In response, all the plaintiffs offer are unsupported allegations that their First Amendment rights to free speech were chilled or that they were intimidated.

Interestingly, the plaintiffs have submitted the minutes of township meetings <u>prior</u> to November 15, 2000. (Doc. No. 63, Exhs. C-J).  However, they have supplied no minutes of any meeting after that time, to rebut the defendant's proof supported by the plaintiffs' deposition transcripts, that they have in fact spoken and participated in township meetings since November 15, 2000, not to mention that they have publically participated in press releases relating to the activities of Supervisor Smith and their pending law suits.

It is clear from reviewing the transcripts of the <u>pre</u>-November 15, 2000

15

township meetings submitted by the plaintiffs that Smith's activities as a supervisor could certainly be described as less than professional, especially the alleged use of profanity at meetings.  Additionally, a review of those minutes display that the interaction between the plaintiffs and the defendant evidence a political and personal acrymony at best, and even a down right disdain.  However reprehensible for public officials and their constituents, to act in this manner, that alone does not rise to the level of a First Amendment deprivation.

A review of the record, as a whole, does not indicate that the plaintiffs' First Amendment rights have in fact been chilled or intimidated in any way by the purported misdeeds of Smith.  Smith's activity has not, stopped the plaintiffs from questioning his activities, submitting press releases in which they criticize, filing a state court malicious prosecution and federal civil right suits against him.  Looking at the record as a whole, the defendants alleged threat and defamation suit has not caused actual harm or a real deprivation of a First Amendment right. Rather, this matter is more appropriately handled at the polls than in the courts.

As noted by the court in Sullivan, the plaintiffs are anything but intimidated, (Sullivan, at 4).  In fact the record reflects that they have never been intimidated and to allow this matter to go forward as a violation of the Constitution of the United States would be to trivialize the First Amendment. Equally applicable to this case is the courts remark in Sullivan that "where a

16

chilling effect is speculative, indirect or too remote, finding an abridgement of the First Amendment rights is unfounded. (Citing <u>United States v. Harriss</u> 347 U.S. 612 (1954).

For the reasons stated above, **IT IS RECOMMENDED THAT** the defendant's motion for summary judgment be **GRANTED** and the matter be **DISMISSED**.

<u>s/ Malachy E. Mannion</u>
MALACHY E. MANNION
United States Magistrate Judge

Dated:    January 30, 2004

O:\shared\REPORTS\01-0234.final.wpd